CHICAGO, R. I. & G. RY. CO. v. JENKINS.*
(No. 8555.)

(Court of Civil Appeals of Texas. Ft. Worth. March 31, 1917. Rehearing Denied May 12, 1917.)

1. APPEAL AND ERROR ☞1051(1)—REVIEW—HARMLESS ERROR.

In an action against a connecting carrier for damages to an interstate shipment of mules, objection to the admission of hearsay evidence that defendant's employé had stated that defendant's train had gone and left plaintiff's stock was immaterial, where the fact was indisputably shown by other evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161, 4162, 4165, 4166.]

2. CARRIERS ☞230(3) —, CARRIAGE OF LIVE STOCK—JURY QUESTION.

Whether delay was required by a necessity, if any, for a change of cars or, because of a want of due care, held for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 962.]

3. CARRIERS ☞228(3) — CARRIAGE OF LIVE STOCK—EVIDENCE—ADMISSIBILITY.

Objection to the evidence that one car of plaintiff's mules was unloaded at a connecting point on the line of a subsequent carrier, and thereby probably damaged, is without merit, where other evidence on part of plaintiff tended to show that upon his arrival at such point he particularly instructed defendant's agent in charge of the delivering train to unload at other stockyards which were well provided for with facilities.

4. CARRIERS ☞219(1) — CARRIAGE OF LIVE STOCK—NEGLIGENCE IN UNLOADING.

Defendant would be liable for the consequences of its failure to observe directions given by plaintiff to unload in certain stockyards due to its negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 950.]

5. CARRIERS ☞228(3) — CARRIAGE OF LIVE STOCK—LIABILITY OF INITIAL CARRIER—ADMISSIBILITY OF EVIDENCE.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379, making the initial carrier liable for negligence on the part of any of the carriers, evidence of the negligence of a connecting carrier is admissible as against the initial carrier.

6. APPEAL AND ERROR ☞204(2)—REVIEW—EVIDENCE.

In an action for damages to an interstate shipment of live stock, a connecting carrier cannot complain on appeal of the admission of evidence of the negligence of a subsequent carrier, admissible as against the initial carrier, where such connecting carrier made no request to limit such evidence after the initial carrier was relieved by the peremptory charge of the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1260, 1261, 1280.]

7. CARRIERS ☞218(5) — CARRIAGE OF LIVE STOCK—LIMITATION OF LIABILITY—VALIDITY—CONSIDERATION.

In an action for damages to an interstate shipment of mules, where a shipping contract made with the initial carrier, limiting liability of the carrier, was not executed in consideration of a grant of a lower rate, whatever presumption might arise from the terms of the contract, the provision that in event of total loss liability should be limited to $100 per head was not binding.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696.]

8. CARRIERS ☞219(8) — CARRIAGE OF LIVE STOCK—LIMITATION OF LIABILITY.

As defendant connecting carrier was not a party to such contract, and required the plaintiff to enter into another and different contract not shown on this appeal to contain the limitation invoked, such carrier cannot take advantage of the limitation of liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 951.]

Appeal from District Court, Montague County; C. F. Spencer, Judge.

Suit by J. V. Jenkins against the Chicago, Rock Island & Gulf Railway Company and others. Judgment for plaintiff, and named defendant appeals. Affirmed.

John Speer, of Bowie, and Lassiter, Harrison & Rowland, of Ft. Worth, for appellant. W. S. Jameson and Paul Donald, both of Montague, Hoover & Dial, of Canadian, and J. A. Templeton, of Ft. Worth, for appellee.

CONNER, C. J. The appellee instituted this suit against the Pecos & North Texas Railroad Company, the Atchison, Topeka & Santa Fé Railway Company, and the Chicago, Rock Island & Gulf Railway Company to recover damages to a shipment of two cars of mules from Plainview, Tex., a point on the Pecos & North Texas Railway, to Windsor, Va. It was alleged that the shipment was negligently delayed and roughly handled, causing the death of one mule and a depreciation in the value of the others, to his damage in the sum of $1,970.

The defendant the Chicago, Rock Island & Gulf Railway Company, pleaded the general denial; that it handled the shipment to the end of its line, and there delivered it to its next connecting carrier, and that if the stock were damaged thereafter, such subsequent injury was not chargeable to it; that the shipment was a movement of interstate commerce, and it was handled under a written contract containing stipulations which will be hereinafter referred to controlling the defendant's liability.

The case was tried on January 20, 1916, and a verdict and judgment rendered in the plaintiff's favor for $1,650 against the Chicago, Rock Island & Gulf Railway Company and in favor of the other two companies named pursuant to the instruction of the court.

The mules were shipped from Plainview and transported from that point over the Pecos & North Texas Railway to Amarillo, Tex., and there transferred to the Chicago, Rock Island & Gulf Railway, and by that company transported to Memphis, Tenn., and from Memphis they were transported over connecting lines of railway to Windsor, Va., the final destination of the shipment. The transportation from Plainview to Amarillo seems to have been with due care and despatch, but at Amarillo the mules were trans-

ferred by the Chicago, Rock Island & · Gulf Railway Company from the cars in which the shipment began to other cars, which were alleged not to be in due order. There was also a delay at that place from about 8 :45 of the evening of November 18, 1913, to a little after the same time of the evening of the next day, of which complaint is made. There was also evidence of other delays and injuries to the mules because of rough treatment, unloading in muddy pens, etc., on the part of the Chicago, Rock Island & Gulf Railway Company, which will be later more particularly noticed.

[1, 2] The record· has been carefully considered, but we have found nothing in the proceedings that constitutes prejudicial error, or that we think requires extended discussion. The objection on the ground that it was hearsay to the statement of an employé of the Santa Fé Company at Amarillo that the Rock Island's train had gone and left his stock is immaterial, in that the fact embodied in the statement was indisputably shown by other evidence. Moreover, the evidence was to the effect that the mules in question, after a short run from Plainview, arrived in Amarillo, as stated, at 8 :45 p. m.; that the schedule time for the departure of the regular freight train for Memphis over the Chicago, Rock Island & Gulf Railway was about 9:15 of the same evening; that upon the arrival of the mules in Amarillo the Rock Island was immediately notified of their arrival. A little later the plaintiff went to the station of the Gulf, Colorado & Santa Fé Railway Company and requested a second notification. The agent of that company, after communication over the telephone, made the statement to the plaintiff complained of. As stated, it is undisputed in the evidence that the daily freight which left Amarillo for Memphis on the evening or night of November 8th did leave the plaintiff's mules in Amarillo, notwithstanding the notification of their arrival. there in time, or in apparent time, to have forwarded them by that train. Whether this delay was required by a necessity, if any, for a change of cars, or, on the contrary, because of a want of due care, were questions for the jury, and the declaration complained of seems to have been a part of the transaction that arose spontaneously and without design.

[3-5] The objection to the evidence that one car of the plaintiff's mules was unloaded at Memphis on the line of the Louisville & Nashville Railway Company, and thereby probably damaged, is without merit, in that other evidence on the part of the plaintiff tended to show that upon his arrival at Memphis he particularly instructed the agents of the appellant company in charge of the delivering train to unload his stock for feed, water, and rest at the Union Stockyards at that point, which were well provided with facilities for' such purpose. This was not done on the part of appellant but, on the

contrary, they were placed in the pens of the Louisville & Nashville Railway Company, a connecting carrier; such pens being very muddy and without facilities to properly feed, water, and rest the animals. There was evidence tending to show that the failure on the part of appellant to observe the directions given to unload in the Union Stockyards was due to negligence, and hence appellant would be liable for the consequences. Moreover, at the time of the introduction of this evidence the initial carrier was a party to the suit, and, as such, · under the Interstate Commerce Law, liable for negligence on the part of any of the carriers. Therefore, as against the initial carrier, at least, the evidence was admissible and no request in behalf of appellant was made to have the evidence limited to that carrier.

[6] And the suggestion last made is also, we think, an answer to the appellant's objection to the plaintiff's testimony to the effect that when his mules arrived at Windsor they were in a famished condition, and he took them to the country and bought feed and fed them until they got into better condition. As against the initial carrier the evidence, as stated, was evidently admissible, and after such initial carrier was relieved by the peremptory charge of the court, no request on the part of appellant was made to limit the evidence. Moreover, the court specifically charged the jury, among other things, that they · could not assess any damages against appellant which was not occasioned by its own negligence proximately causing the injury. And nothing in the record is pointed out from which it can be said that the jury in any way assessed damages against this appellant in violation of the court's charge.

[7, 8] The evidence of plaintiff's qualification we think sufficient to authorize him to speak on the question of the value of the mules in Windsor had they arrived in the usual good condition of such shipments, and the further objection that the value of the one mule shown to have died in transit should have been limited from $150, as stated by the plaintiff in his evidence, to $100, as provided in a clause of the written contract of the initial carrier, may be answered in two ways: First, as shown in effect by the trial· judge in his explanation to appellant's bill of exceptions on this point, the shipping contract of the initial carrier, Pecos & North Texas Railway Company, was attacked by the plaintiff, both in his pleadings and evidence, and it affirmatively appears that the contract was not executed in consideration of a grant of a lower rate. Therefore, whatever presumption might otherwise be held to arise from the terms of the contract, it cannot be said that there was binding force in the provision that in event of a total loss the defendant's liability should be limited to $100 per head. Second, it affirmatively appeared that upon,

the arrival of the plaintiff's mules at Amarillo for a further shipment of his mules over the line of the appellant railway company he was required to enter into another and different contract not shown on this appeal to contain the limitation invoked. Appellant therefore is not in a favorable attitude to insist upon a provision of the contract to which it was not a party and upon which it specifically declined to continue the shipment. T. & P. Ry. Co. v. Leatherwood, No. 8517 in this court (not for publication).

We find nothing requiring particular notice in the remaining assignments. We think the charge of the court was not erroneous in the particulars in which it has been criticized, and that the charge on the whole was all that appellant was entitled to demand under the evidence.

It is accordingly ordered that all assignments of error be overruled, and the judgment affirmed.