THOMPSON v. SAN PAT VEGETABLE CO., Inc.

No. 9673.

Court of Civil Appeals of Texas. Austin.

Nov. 19, 1947.

Rehearing Denied Dec. 10, 1947.

Kleberg, Eckhardt, Mobley & Roberts and Leslie S. Lockett, all of Corpus Christi, for appellant.

Owen D. Cox, Ward & Brown, and Howell Ward, all of Corpus Christi, for appellee.

HUGHES, Justice.

San Pat Vegetable Company, Inc., appellee, sued Guy A. Thompson, trustee for St. Louis, Brownsville & Mexico Railway Company, debtor, appellant, to recover damages, alleged to have been suffered in transit, to a carload of tomatoes shipped by it from Pharr, Texas, originally consigned to appellee at St. Louis, Missouri, and diverted by it to Minneapolis, Minnesota. Appellant and its connecting lines were the carriers.

Trial was without a jury. Judgment was for the shipper. No statement of facts has been filed in this court but findings of fact and conclusions of law made by the trial court are included in the transcript.

These facts are undisputed: The car of tomatoes arrived in Dexo, Illinois (the outer railroad yards of St. Louis, Missouri), on December 22, 1941, and was delivered at St. Louis, Missouri, December 23, 1941, at 11:35 a. m. The evening of December 24, 1941, appellee sent from Sinton, Texas, a telegraphic night letter, instructing the carrier to divert the car immediately to George C. Palmer Brokerage Company, Minneapolis, Minnesota, via the fastest route. Such telegraphic night letter was received by the carrier at St. Louis on December 25, 1941, at about 7:30 a. m. If the diversion order had been properly and promptly executed by the carrier, the car would have moved to destination (Minneapolis) for delivery to the consignee for the market of Saturday, December 27, 1941, but the same arrived Sunday, December 28, 1941, and was delivered to the consignee for the market of Monday, December 29, 1941. When the tomatoes were delivered to the carrier at the point of origin, they were all sound and marketable, and on the basis of their quality and size they would have been worth, at Minneapolis, Minnesota, on the market of December 27, 1941, the sum of $1,985.75. These tomatoes arrived in damaged condition for the market of December 29, 1941, and in their condition on that market they were worth the sum of $400.

The delay of the shipper (appellee) in ordering diversion of the tomatoes was about 44 hours; the delay of the carrier in executing such diversion was about 48 hours.

It is appellant's theory of the case that appellee's delay contributed to the loss and since this delay occurred prior to its negligent delay that the burden was upon appellee to prove the extent of the damage caused by its own delay in directing diversion, and there being no such proof the trial court could not apportion the damage; and hence erred in awarding appellee judgment for the entire loss.

There being no statement of facts, appellant's theory is necessarily predicated upon the findings and conclusions of the trial court, which we will now examine.

On May 3, 1947, in response to appellant's request the trial court made and filed findings of fact and conclusions of law, in which the court found that there was no evidence that the tomatoes were damaged or decayed prior to their departure from St. Louis, and no evidence that the shipper's delay in ordering diversion contributed to or caused the damaged and decayed condition in which the tomatoes arrived in Minneapolis.

On May 10, 1947, appellant filed a request for additional findings of fact, "supplementing the findings of fact on file herein." The requested additional findings were: That the damage to the tomatoes was caused by (1) the delay of appellee in ordering the shipment diverted, and (2) the delay of the shipper in executing such diversion.

On the same day the trial court approved and made these requested findings with the qualification that, as a matter of law, the burden was on the carrier to show the damage attributable to shipper's delay, and having failed to show the condition of the tomatoes after shipper's delay, the carrier was liable for the entire loss.

On May 21, 1947, the trial court, at the request of appellant, filed "amended findings of fact and conclusions of law."

These findings, except for a few unimportant details, were identical with the original findings made and filed on May 3, 1947. They entirely omitted the supplemental findings of May 10, 1947, without which there would be no factual basis for appellant's contention that the shipper's delay contributed to the loss.

Appellee contends that the findings of May 21, 1947, supersede and are in lieu of the supplemental findings of May 10 and the original findings of May 3, citing Waters v. Yockey, 144 Tex. 592, 192 S.W. 2d 769, 770.

In that case amended findings of fact and conclusions of law were requested and filed. The second or amended set of findings were full and complete within themselves and covered the entire case. They contained findings inconsistent with the original findings. The court held: "The court granted the motion and filed an entirely new set of findings. The fact that the trial court filed an entirely new set of findings covering the whole case, which were complete in themselves and inconsistent with the findings previously filed, shows clearly, we think, that the trial judge intended that the latter set of findings should serve as a substitute for the first set of findings, and should control in the disposition of the case."

■ In this case amended findings were filed at appellant's request after original and supplemental findings had been made and filed at its request, and such amended findings appear full and complete. Under the above authority it would seem that the original and supplemental findings have been superseded by the amended findings. But whether the prior findings are superseded or not the amended findings control as to any previous conflicting findings. Waters v. Yockey, Tex.Civ.App., 193 S.W. 2d 575.

Amended finding No. 8 finds that there is no evidence that the tomatoes were damaged because of any excepted provision in the bill of lading; there is no evidence that the tomatoes were damaged or decayed prior to their departure from St. Louis, and and that appellant offered no evidence that the shipper's delay caused or contributed to the damaged condition of the tomatoes when delivered in Minneapolis.

These findings are inconsistent with the prior finding that appellee's delay contributed to the loss, and hence such prior finding is of no effect.

■ The trial court has found in the amended findings that the carrier's delay in executing the diversion order and in not promptly delivering the tomatoes was the fault of the carrier and its connecting lines, but there is no finding as to the cause of damage to the tomatoes. We then have a typical case of a shipment being delivered to the carrier in good condition and received in bad condition, which gives rise to a presumption that the damage or loss was caused by negligence of the carrier. 8 Tex.Jur., p. 394.

We know that tomatoes, being perishable, would eventually rot, but we are not at liberty to find, under this record, that the damage to the tomatoes was caused by delay, or solely by delay. The burden was on the carrier to show the damage resulted from inherent infirmity of the tomatoes and that it was free from any negligence contributing to the damage. Cleburne Peanut & Products Co. v. Missouri K. & T. R. Co., Tex.Com.App., 221 S.W. 270. Appellant has discharged neither burden.

We have also concluded that appellee's third counter point challenging the sufficiency of appellant's pleadings to raise the issue of whether the shipper's delay contributed to the loss, should be sustained.

Appellee did not plead its own delay, but alleged that appellant did not properly carry and promptly deliver the tomatoes. Appellant answered by general denial only.

Thompson v. Associated Growers of Brownsville, Tex.Civ.App., 162 S.W.2d 754, 755, is almost identical with this case on the facts. A shipment of tomatoes was diverted by the shipper. Plaintiff alleged and proved that the tomatoes were delivered to the carrier in good condition and that they arrived at destination in a damaged condition, which facts the court held to make a prima facie case for recovery. The carrier pleaded only a general denial and offered no testimony. In affirming judgment for the shipper the court disposed of the carrier's claim that the shipper's delay had caused the loss by holding: "In its sixth and seventh points appellant contends that the damaged condition of the tomatoes was occasioned by delays incident to appellee's own acts in causing the shipments to be diverted in transit. This was a defense which appellant did not plead and upon which it did not elicit or request jury findings, and was thereby waived."

Rule 94, Texas Rules of Civil Procedure, provides that a party in pleading to a preceding pleading, "shall set forth affirmatively * * * contributory negligence * * * and any other matter constituting an avoidance or affirmative defense."

Rule 279, T.R.C.P., provides, in jury cases, that " * * * a party shall not be entitled to an affirmative submission of any jury issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part * * *."

Appellant does not deny the insufficiency of its pleading to put in issue the affirmative defense now urged as requiring reversal, but relies upon Rule 67, T.R.C.P., which provides that, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The caption to this Rule reads: "Amendments to Conform to Issues Tried Without Objection."

As evidencing consent, appellant, in its brief, states that (1) no objection to the absence of pleading was made in the trial court when the defense under consideration was made; (2) appellee did not object to the request for findings and findings relative to this defense.

There is no statement of facts before us and the record before us does not show that evidence of this affirmative defense was received without objection.

The requested findings were not excepted to by appellee.

Bednarz v. State, 142 Tex. 138, 176 S.W. 2d 562; Lolley v. Lolley, Tex.Civ.App., 181 S.W.2d 941 (Writ Dis.); Tew v. Griffith, Tex.Civ.App., 187 S.W.2d 408 (Writ Ref. WOM), and Daugherty Grain Co. v. S. T. Oates Grain Co., Tex.Civ.App., 191 S.W.2d 804, are cited by appellant.

In the Bednarz case the defendant filed no answers, but the parties agreed as to what the issues were and no objection to the trial of these issues was made by plaintiff until the case reached the appellate court. Under these facts the court held the objection of lack of pleadings came too late.

The Lolley case involved the custody of a child who was awarded to the grandfather although he was not a party to the suit. It appeared that the grandfather was present at the trial, requested custody of the child, and that appellant testified that appellee's father and mother would give the child a good home and that he would not

ask for the child to be moved. The court held the lack of pleadings was not material, as the issues raised by the grandfather were tried with implied consent.

The three other cases cited were all cases in which evidence as to issues not made by the pleadings was admitted without objection and such issues were actually determined by the court or jury before complaint was made. Consent to the trial of these issues was implied in each case.

■ We are unable to discover any fact sufficient to justify the conclusion that appellee consented, expressly or by implication, to the trial of the issue that delay on the part of the shipper contributed to the loss. The record does not show that appellee failed to object to testimony supporting this issue. If objection had been made to. such evidence on the ground that there was no pleading to support it and such objection had been overruled, consent would be expressly negatived. Yet in such case the evidence would be in the record and could form the basis for findings of fact by the trial court. Then, too, the findings of fact were requested and filed long after the trial had ended and final judgment rendered, and, as we have held above, were withdrawn by the trial court. For these reasons no implied consent to try this issue is shown.

There being no reversible error, the judgment of the trial court is affirmed.

Affirmed.